IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIRECT IMAGING SYSTEMS, INC.   /
    A Florida Corporation   /
                                 /   Case No. _____
    Plaintiff,   /
                                 /
v.   /
                                 /
HIRSCH INTERNATIONAL CORP.,   /
                                 /
and   /
                                 /
GRAPHIC ARTS ACQUISITION CORP.   /
                                 /
    Defendant.   /
_____/

## COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, Direct Imaging Systems, Inc. ("DIS"), for its Complaint against Hirsch International Corp. ("Hirsch") and Graphic Arts Acquisition Corp. ("GAA") alleges as follows:

### THE PARTIES

1. DIS is a corporation incorporated under the laws of the State of Florida, having its principal place of business in the State of Florida, and having an office at 504 Lakeside Drive, Bradenton, Florida 34210.

2. Hirsch is a corporation incorporated under the laws of the State of Delaware and having its principal place of business in the State of New York.

3. Hirsch has a corporate headquarters at 50 Engineers Road Hauppauge, New York, 11788.

4. GAA is a corporation incorporated under the laws of the State of Delaware and was established as a subsidiary of Hirsch.

5. This action has arisen, *inter alia*, under the laws of the State of Florida. This action has also arisen under the patent laws of the United States, Title 35 United States Code, Section 271 *et seq.*

6. Jurisdiction of this action arises under 28 U.S.C. §1338(a). Venue is predicated under 28 U.S.C. §1391(c).

## BACKGROUND

7. On August 1, 2000, United States Patent Number 6,095,628 (hereinafter the '628 Patent) entitled "Apparatus for Ink Jet Printing" was duly and regularly issued to Matthew Rhome of Bradenton, Florida a copy of the aforesaid patent is attached hereto as <u>Exhibit A.</u>

8. The '628 Patent is entitled "Apparatus for Ink Jet Printing." In particular, the '628 Patent describes an apparatus for printing a design on a substrate, such as a garment. The printed design may include words, designs, or logos and may be programmed into a control system of the apparatus using either standardized or customized software. Figure 3 from the '628 Patent is reproduced below.



9. DIS is the owner, by assignment, of the '628 Patent and of all rights thereto and thereunder.

10. DIS previously filed a Complaint for patent infringement against U.S. Graphic Arts, Inc. ("USGA") for infringement of the '628 Patent. USGA was based in Scottsdale, Arizona.

11. The founder and President of USGA was Scott Fresner.

12. DIS alleged that USGA infringed the '628 Patent via, *inter alia*, sales of its Fast T-Jet Standard and Fast T-Jet Jumbo direct to garment printers. The case was filed in the Middle District of Florida under Case No. 8:05-cv-02224-SCB-TGW (hereinafter "Prior Litigation").

13. On September 8, 2006, during the pendency of the Prior Litigation, USGA filed a reexamination request relative to the '628 Patent under Control Number 90/008,211.

14. The Court in the Prior Litigation stayed the litigation pending the outcome of the reexamination.

15. The reexamination proceedings concluded on March 29, 2011 with the USPTO issuing Ex Parte Reexamination Certificate No. 8121. A copy of the '628 Reexamination Certificate is attached hereto as Exhibit B. The reexamination confirmed that patentability of Claim 5 of the '628 Patent as amended.

16. Following the reexamination, the Prior Litigation was reopened. However, USGA failed to participate in the litigation.

17. On December 19, 2011 a Final Judgment and Permanent Injunction was entered against USGA, a copy of which is included as Exhibit C (hereinafter "Final Judgment").

18. The Final Judgment awarded damages to DIS in the amount of $3,000,000 and legal fees in the amount of $21,929.

19. The Final Judgment also permanently enjoined USGA as well as its officers, agents, employees, subsidiaries, and those acting the concert with them, from any infringement, induced infringement, or contributory infringement of the '628 Patent via using, selling, offering to sell, and/or importation of ink jet printing devices. The permanent injunction included, but was not limited to, the Fast T-Jet Standard and the Fast T-Jet Jumbo.

20. The Final Judgment was recorded in Mariciopa County, Arizona on August 30, 2013, a copy of which is attached hereto as <u>Exhibit D.</u>

21. On information and belief, Hirsch acquired an 80% interest in USGA sometime in 2008 (hereinafter the "Acquisition")

22. Hirsch also acquired an option to purchase the remaining stock in USGA at a later date.

23. GAA was established as a subsidiary of Hirsch.

24. Following the Acquisition, Hirsch maintained USGA's offices in Scottsdale, Arizona.

25. Following the Acquisition by Hirsch, Scott Fresner was retained as an employee of USGA.

26. Following the Acquisition by Hirsch, Scott Fresner continued to participate in the day-to-day operations of USGA.

27. Following the Acquisition by Hirsch, USGA continued to sell direct-to-garment printers.

28. Sometime in 2009 USGA ceased operations. On or about June of 2009 Hirsch, either itself or via GAA, held an auction of certain assets of USGA. On information and belief, Hirsch auctioned off various T-Jet direct to garment printers as well as associated components.

29. Some of the components sold at the auction are believed to have been used to reconstruct and assemble entirely new Fast T-Jet Standard and Fast T-Jet Jumbo direct to garment printers.

30. On or about the time of the Acquisition, Hirsch became an authorized distributor of direct to garment printers manufactured by Kornit Digital Ltd.

31. Hirsch continues to be an authorized distributor for Kornit Digital Ltd.

32. Under its agreement with Kornit, Hirsch now sells and distributes the following direct to garment printers: Kornit Breeze, Kornit Thunder 932, Kornit Storm-II, Kornit Avalanche, and Kornit 933 Paradigm.

33. The Kornit Breeze is depicted below:



34. The Kornit line of direct to garment printers operate in the same manner as the Fast T-Jet Standard and Fast T-Jet Jumbo.

## COUNT I
## Direct Infringement of U.S. Patent 6,095,628 C1
## (Hirsch)

35. DIS re-alleges Paragraphs 1-34 herein.

36. Upon information and belief, Hirsch has directly infringed the '628 Patent by selling and distributing ink jet printing devices that duly embody the invention as claimed in the '628 Patent.

37. In particular, Hirsch is infringing the '628 Patent by distributing or selling the Kornit Breeze brand direct to garment printers.

38. The infringement referenced above is willful and deliberate.

39. The infringement of the '628 Patent has deprived DIS of revenues which it otherwise would have made and has in other respects injured DIS and will cause DIS added injury unless enjoined by this Court.

40. DIS has been damaged by the acts of infringement complained of herein.

41. DIS has no adequate remedy without the intervention of this Court.

42. This case is "exceptional" within the meaning of 35 USC § 285.

## COUNT II
## Indirect Infringement of U.S. Patent 6,095,628 C1
## (Hirsch and GAA)

43. DIS re-alleges Paragraphs 1-34 herein.

44. Upon information and belief, Hirsch, itself or through GAA, has indirectly infringed the '628 Patent by selling components of T-Jet direct to garment printers that were subsequently used in the reconstruction and assembly of new T-Jet direct to garment printers.

45. The sale of T-Jet component parts by Hirsch/GAA also contributed to or induced the infringement of the '628 Patent by others.

46. The infringement referenced above is willful and deliberate.

47. The infringement of the '628 Patent has deprived DIS of revenues which it otherwise would have made and has in other respects injured DIS and will cause DIS added injury unless enjoined by this Court.

48. DIS has been damaged by the acts of infringement complained of herein.

49. DIS has no adequate remedy without the intervention of this Court.

50. This case is "exceptional" within the meaning of 35 USC § 285.

## COUNT III
## Successor Liability
## (Hirsch)

51. DIS re-alleges Paragraphs 1-34 herein.

52. The Acquisition constituted a *de facto* merger between USGA and Hirsch.

53. Following the Acquisition, Hirsch's business activities continued as a mere continuation of USGA's prior business activities.

54. As a result of the foregoing, Hirsch has expressly or impliedly assumed the liabilities of USGA.

55. DIS requests that the Final Judgment be enforced against Hirsch as the successor to USGA.

56. DIS further requests a full accounting to determine the assets currently held by Hirsch.

**WHEREFORE**, Plaintiff prays that:

    A.    An injunction be granted preliminarily and permanently restraining Hirsch and GAA and all those in privity with them from further infringement of the '628 Patent.

    B.    Hirsch and GAA be required to account to DIS for the damages recoverable by DIS under 35 U.S.C. §284 as a result of the wrongful making, using, and selling of the inventions as claimed in Plaintiff's '628 Patent, the exact extent of which cannot now be determined by DIS, and that all of such damages be trebled.

    C.    DIS requests that the Final Judgment be enforced against Hirsch as the successor to USGA.

    D.    DIS be awarded its reasonable attorneys' fees;

    E.    DIS be allowed its costs; and

    F.    Such other and further relief be granted to which DIS may be justly entitled.

## JURY DEMAND

DIS demands a trial by jury.

Respectfully submitted,

*/s/ Michael Colitz III*

Michael J. Colitz, III
Trial Counsel
Florida Bar No. 164348
GrayRobinson P.A
401 East Jackson Street, Suite 2700
Post Office Box 3324
Tampa, FL 33602
Tel: 813-273-5000
Fax: 813-273-5145
michael.colitz@gray-robinson.com
Attorneys for Plaintiff

\54101255\10 - # 4986626 v4