UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| DIRECT IMAGING SYSTEMS, INC., a Florida corporation<br><br>Plaintiff,<br><br>v.<br><br>HIRSCH INTERNATIONAL CORP. and GRAPHIC ARTS ACQUISITION CORP.,<br><br>Defendants. | CASE NO. 8:14-cv-3057-T-36MAP<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOC. 1)**<br><br>(AND INCORPORATED MEMORANDUM OF LAW) |

Defendants Hirsch International Corp. ("Hirsch") and Graphic Arts Acquisition Corp.

("GAA" and, together with Hirsch, collectively, "Defendants"), pursuant to Rule 12(b)(6),

Federal Rules of Civil Procedure, respectfully request that the Court enter an order

dismissing with prejudice Counts II and III of the Complaint filed by Plaintiff Direct Imaging

Systems ("Plaintiff").[1]

## I.    PRELIMINARY STATEMENT

Plaintiff's eight-page Complaint falls far short of meeting the minimum pleading

requirements to maintain an action against Hirsch or GAA for induced or contributory patent

infringement, or for successor liability.  Relying upon legal conclusions, naked assertions,

---

[1]  Defendants have not yet answered Count I and would respectfully submit that the service of the instant motion automatically extends their time for doing so until 14 days after the Court decides this motion.  *See* FED. R. CIV. P. 12(a)(4); *see also, e.g., Beaulieu v. Bd. of Trustees of Univ. of W. Fla.*, No. 3:07-cv-30, 2007 WL 2020161, at *2 (N.D. Fla. July 9, 2007) (collecting cases and concluding "a party need not file an answer while a partial motion to dismiss is pending . . ." because Rule 12(a)(4) "automatically extends [the] time to answer . . . until after the court has ruled"); *Pushko v. Klebener*, No. 3:05-cv-211, 2005 WL 7460162, at *1 (M.D. Fla. June 10, 2005) (same).  In an abundance of caution, however, to the extent necessary (and, if required, upon a proper conferral pursuant to Local Rule 3.01(g)), Defendants would respectfully request an extension of time to answer Count I of Plaintiff's Complaint until 14 days after the Court decides this motion.

and formulaic recitations, the Complaint is devoid of the factual allegations – let alone the sort of *Twombly* "heft" – required to plead any of these claims against Hirsch or GAA.

Plaintiff's Complaint asserts that Hirsch and GAA indirectly infringed U.S. Patent No. 6,095,628 ("the '628 patent") by inducing or contributing to the infringement of the '628 patent by "others." Despite making these conclusory assertions, Plaintiff fails to allege any of the necessary elements for either theory of indirect infringement, let alone sufficient facts to plausibly support its claims. For example, Plaintiff fails to plead that Hirsch or GAA specifically intended that a third party directly infringe the '628 patent and knew that the third party's acts constituted direct infringement, as is required to establish a claim for induced infringement. Similarly, Plaintiff fails to plead that the printer components allegedly sold by Hirsch or GAA to "others" in 2009 constituted a material part of the claimed invention in the '628 patent and that such printer components had no substantial non-infringing uses, as is required to establish a claim for contributory infringement. Additionally, Plaintiff's mere allegation that Hirsch or GAA have caused infringement "by others," fails to plausibly support the existence of any underlying direct infringement, which is a predicate requirement for both induced and contributory infringement.

The Complaint also purports to assert a claim for successor liability against Hirsch, seeking to hold Hirsch liable for a default judgment Plaintiff obtained in a prior lawsuit against non-party U.S. Graphic Arts, Inc. ("USGA"). Although Plaintiff makes the conclusory assertion that "Hirsch [is] the successor to USGA" and recites three different theories of successor liability, it has not alleged the facts necessary to establish successor liability under any of these theories. Quite the contrary, Plaintiff has foreclosed any

possibility of successor liability by pleading that Hirsch acquired a majority of USGA's stock – not its assets – and that subsequently, USGA's management, employees, location and operations continued unchanged.  As a matter of law, Plaintiff cannot plead a claim of successor liability based on these allegations.

Accordingly, Plaintiff's claims for induced infringement, contributory infringement and successor liability should be dismissed with prejudice.

## II.   BACKGROUND

Plaintiff filed its Complaint on December 8, 2014, purporting to assert three separate causes of action against Defendants, two of which are based on patent infringement and one of which is based on successor liability.  (Doc. 1, ¶¶ 35–56).

Count I asserts that Hirsch is directly infringing the '628 patent by "distributing or selling" Kornit Breeze brand direct-to-garment printers. (*Id*. at ¶¶ 36–37).  In turn, Count II asserts that Hirsch and/or GAA have indirectly infringed the '628 patent.  (*Id*. at ¶ 44).  Notably, this indirect infringement claim is not tied or related in any way to the direct infringement claim asserted against Hirsch.  Rather, Plaintiff's indirect infringement claim appears to be based on its allegation that, in 2009, Hirsch, GAA or both sold some printer components that were then used by "others" to construct new printers.  (*Id*. at ¶¶  44–45); *see also* (*Id*. at ¶¶ 28–29).  More specifically:

> 44.    Upon information and belief, Hirsch, itself or through GAA, has indirectly infringed the '628 Patent by selling components of T-Jet direct to garment printers that were subsequently used in the reconstruction and assembly of new T-Jet direct to garment printers.

45.     The sale of T-Jet components parts by Hirsch/GAA also contributed to or induced the infringement of the '628 Patent by others.

46.     The infringement referenced above is willful and deliberate.

(*Id*. at ¶¶ 44–46).  Other than two paragraphs that recite substantially the same allegations as paragraph 44 above, (*Id*. at ¶¶ 28–29), the body of the Complaint lacks any further allegations with respect to Plaintiff's indirect infringement claim.

Other than merely stating the two theories of indirect infringement – inducement and contributory infringement, (*Id*. at ¶ 45) – the Complaint does not contain **any** further allegations to support Plaintiff's indirect infringement claims.  The Complaint lacks any factual allegations concerning the various elements that are required to establish claims for induced infringement and contributory infringement.  Indeed, the Complaint does not even provide a cursory, formulaic recitation of any of these required elements.

Count III purports to assert a claim for successor liability against Hirsch.  (*Id*. at ¶¶ 51–56).  In general, Plaintiff appears to ground this claim on its assertions that Hirsch is a successor to USGA and, as a result, should be liable to Plaintiff for a default judgment that was entered against USGA in a prior lawsuit brought by Plaintiff in 2005.  The body of this third count lacks any factual allegations.  Instead, it merely contains a series of conclusory assertions, which appear to recite three separate theories of successor liability: (i) Hirsch's alleged stock acquisition "constituted a *de facto merger* between USGA and Hirsch;" (ii) "[f]ollowing the [stock acquisition], Hirsch's business activities continued as a mere continuation of USGA's prior business activities;" and (iii) "as a result of the foregoing, Hirsch has expressly or impliedly assumed the liabilities of USGA."  (*Id*. at ¶¶ 52–54).

Neither the body of Count III nor the Complaint contain any factual allegations that would support any of these three theories.  Most basically, Plaintiff does not even plead that Hirsch acquired the assets of USGA.  Plaintiff instead pleads that Hirsch acquired 80% of USGA's stock and an option to acquire more.  (*Id*. at ¶¶ 21–22).

Plaintiff also does not plead that Hirsch took over the business operations of USGA.  Instead, Plaintiff pleads that after the stock purchase, USGA's business continued unchanged: (i) USGA continued to operate in its same offices, (*Id*. at ¶ 24); (ii) USGA's president, Scott Fresner, was "retained as an employee of USGA" and "continued to participate in the day to day operations of USGA," (*Id*. at ¶¶ 25–26); and (iii) "USGA continued to sell direct-to garment printers."  (*Id*. at ¶ 27).

III.   STATEMENT OF LAW

Deficient claims should be disposed of "at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts to support "a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).  To state a facially plausible claim, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and those factual allegations "must be enough to raise a right to relief above a speculative level."  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 545.

If a plaintiff merely pleads "bare assertions," "conclusory" allegations, and "bare elements of his cause of action," then the complaint "stops short of the line between

possibility and plausibility," and should be dismissed.  *See, e.g., Iqbal*, 556 U.S. at 1950-51, 1954; *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1332 (Fed. Cir. 2012) [hereinafter, "*In re Bill of Lading*"]; *Davila v. Delta Airlines Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  As this Court has explained, "[l]abels, conclusions[, mere naked assertions,] and formulaic recitations of the elements of a cause of action are not sufficient" to meet this standard.  *Brandywine Comm's Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1265 (M.D. Fla. 2012) (Honeywell, J.) (citing *Twombly*, 550 U.S. at 555).

With respect to patent cases, in particular, although some courts have found that claims for direct infringement need only meet the terse pleading standard set forth in Form 18,[2] this is not the case with respect to claims for indirect infringement.  Indeed, it is well settled that claims for indirect infringement must include factual allegations sufficient to meet the pleading requirements set forth in *Twombly* and *Iqbal*.  *See, e.g., In re Bill of Lading*, 681 F.3d at 1337-38; *Brandywine*, 904 F. Supp. 2d at 1265–67; *Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 6:14-cv-1017, 2015 WL 1246500, at *8-*9 (M.D. Fla. Mar. 16, 2015); *Brandywine Communs. Techs., LLC v. Casio Computer Co., Ltd.*, 912 F. Supp. 2d 1338, 1345 (M.D. Fla. 2012) (Honeywell J.) [hereinafter, "*Casio*"] (noting that mere "compliance with Form 18 is insufficient to plead induced infringement").

Additionally, under a *Twombly/Iqbal* analysis, facts supporting every element of plaintiff's claim(s) must be alleged. If a complaint fails to adequately allege even one

---

[2] In passing, Defendants note that the U.S. Supreme Court recently adopted proposed amendments to the Federal Rules of Civil Procedure abrogating not only Form 18, but the entire Appendix of Forms.  *See* Order Adopting Proposed Amendments to the Federal Rules of Civil Procedure Apr. 29, 2015, *available at* http://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf (last visited June 4, 2015).

element of a claim, that claim must be dismissed.  *See, e.g.*, *Duval Motor Co. v. Dell Fin.*,

*LLC*, No. 8:08-cv-2476, 2009 WL 1515698, at *2 (M.D. Fla. June 1, 2009).

IV.     ARGUMENT

A.      **Count II of Plaintiff's Complaint Fails to State a Plausible Claim for Induced Infringement or Contributory Infringement**

Describing Plaintiff's Complaint as even a "formulaic recitation of the elements" or

mere "labels and conclusions" may be generous.  The Complaint does not allege any of the

necessary elements for Plaintiff's claims for induced and contributory infringement and is

entirely devoid of facts that would plausibly support either of these indirect infringement

claims.  In particular, Plaintiff fails to plead that Defendants specifically intended any third

party to infringe the '628 patent and knew that the third party's acts constituted infringement,

as is required for induced infringement.   Plaintiff also fails to plead that the printer

components that were allegedly sold by Defendants in 2009 were a material component of

the claimed invention and had no substantial non-infringing uses, as is required for

contributory infringement.  For at least these reasons (as well as others discussed below)

Plaintiff's allegations are insufficient as a matter of law and its claims for induced

infringement and contributory infringement should be dismissed.

1.     **Plaintiff Fails to Allege Any of the Elements Required for Induced Infringement**

A party is liable for induced infringement only if the party "actively induces

infringement of a patent."  35 U.S.C. § 271(b).  To state a plausible claim for induced

infringement, Plaintiff must allege facts supporting four distinct elements: (1) there was

direct infringement by the induced party; (2) the inducer had knowledge of the asserted

patent at the time of the alleged infringement; (3) the inducer possessed specific intent to induce − not merely knowledge of the acts alleged to induce; and (4) there was active inducement of the direct infringer.  *See, e.g., Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305−1306 (Fed. Cir. 2006).  Failure to adequately plead one of these elements is fatal to a claim for induced infringement.  Here, Plaintiff does not even allege, much less factually support, ***any*** of the four required elements.

It is well settled that, based on the statutory language "actively induced," a plaintiff "must plead 'facts plausibly showing that [Defendants] specifically intended their customers to infringe the [patent] and knew that the customer's acts constituted infringement.'" *Brandywine*, 904 F. Supp. 2d at 1266 (quoting *In re Bill of Lading*, 681 F.3d at 1339); *see also DSU Med. Corp.*, 471 F.3d at 1305−1306; *Casio*, 912 F. Supp. 2d at 1345-46. In describing the "intent" element for a claim of induced infringement, the Federal Circuit has made plain:

> [T]he intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have affirmative intent to cause direct infringement. In the words of a recent decision, inducement requires "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." Accordingly, inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.

*DSU Med. Corp.*, 471 F.3d at 1306.  Thus, merely pleading that a defendant had "knowledge of the acts allege to constitute infringement" or "knowledge of possible infringement by

others does not amount to inducement." *Id*. Rather, "specific intent and action to induce infringement must be proven." *Id*.; *see also In re Bill of Lading*, 681 F.3d at 1339; *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005); *Twentieth Century Fox Home Entm't LLC v. Nissim Corp.*, No. 14-81349-CIV-KAM, 2015 WL 3465838, at *2 (S.D. Fla. June 1, 2015) (dismissing induced infringement claim as insufficient and noting that "[m]ost recently, the United States Supreme Court has explained that the scienter element for induced infringement requires that the defendant actively induced infringement") (internal quotations and citations omitted).

Plaintiff's Complaint does not allege any facts plausibly showing that either Defendant specifically intended a third party to infringe the '628 patent or knew that any such third party's acts constituted infringement. Significantly, this Court has consistently dismissed induced infringement claims containing more robust allegations of these elements than are found in Plaintiff's Complaint. For example, in *Casio*, this Court explained that a plaintiff's "conclusory allegations that [defendant] 'actively and knowingly' induced infringement are inadequate to support the element requiring intent and active inducement." 912 F. Supp. 2d at 1347; *see also Brandywine*, 904 F. Supp. 2d at 1269–70 (dismissing an induced infringement claim after finding that a plaintiff's allegations that defendants had induced infringement by "actively and knowingly aiding and abetting others" including consumers of its products were insufficient); *Digitech Info. Sys., Inc. v. Ally Fin., Inc.*, No. 6:10-cv-1398, 2011 WL 3875407, at *4 (M.D. Fla. Sept. 1, 2011) (explaining that merely pleading the phrase "actively induces others to infringe," without more, is conclusory and insufficient).

Here, Plaintiff's Complaint fails to allege that either Defendant actively or knowingly intended infringement of the '628 patent by any third party. Indeed, the Complaint does not even allege that Defendants had actual knowledge of the '628 patent, let alone factually support that Defendants possessed such knowledge at the time of the alleged induced infringement (*i.e.*, in 2009). *See, e.g., Casio*, 912 F. Supp. 2d at 1345–46 (explaining that "[plaintiff] has not even alleged such knowledge, and therefore could not establish the required element.").[3]

Additionally, it is well settled that a claim for induced (or contributory) infringement must adequately allege direct infringement of the patent-at-issue by a third party. *See, e.g., i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F. 3d 831, 850 (Fed. Cir. 2010). In other words, indirect infringement under either theory requires, as a predicate, a finding that some party is directly liable for the entire act of direct infringement. *See Akamai Technologies, Inc v. Limelight Networks, Inc.*, No. 2009-1372, 2015 WL 2216261, at *1 (Fed. Cir. May 13, 2015); *see also, e.g., Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) ("[O]ur case law leaves no doubt that inducement liability may arise 'if, but only if,

---

[3] Although the Complaint lacks any allegation regarding Defendants' knowledge of the '628 patent, to the extent Plaintiff attempts to rely on its allegations concerning the business relationships between Defendants and non-party USGA, those allegations do nothing to remedy the deficiencies in Plaintiff's pleading. *See, e.g., Wi-LAN USA, Inc. v. Research in Motion Ltd.*, No. 12-cv-24349, ECF No. 95, slip op. at 7, 2013 U.S. Dist. LEXIS 97203, at *11 (S.D. Fla. June 6, 2013) (finding plaintiff's allegations concerning involvement in prior litigation with defendants were insufficient to support actual knowledge of patent); *Bonutti Skeletal Innovations LLC v. Arthrex, Inc.*, No. 6:12-cv-1380, ECF No. 43, slip op. at 10 (M.D. Fla. Mar. 29, 2013) (finding "Plaintiff's reference to prior connections between Defendants and [the named inventor]" insufficient to establish actual knowledge of the patents-in-suit) [hereinafter, "*Bonutti*"].

[there] is . . . direct infringement.'") (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961)).

Here, Plaintiff's allegations regarding third-party direct infringement consist of one cursory allusion, namely: that Defendants' alleged sale of printer components "contributed to or induced the infringement of the '628 Patent **by others**." (Doc. 1, ¶ 45, emphasis added). This statement barely makes out even a conclusory allegation of direct infringement, and provides no factual support for the allegation, including what the '628 patent purportedly claims or how the acts of these "others" directly infringed the '628 patent claims. *See, e.g., Bender v. LG Elecs. USA, Inc.*, No. 09-cv-2114, 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010).

Each of these deficiencies, standing alone, demands the dismissal of Plaintiff's induced infringement claim.

**2.      Plaintiff Fails to Allege Any of the Elements Required for Contributory Infringement**

Contributory infringement requires, among other things, that a party has sold or offered to sell a component for use in a patented process or machine which is a material part of the invention and has "no substantial non-infringing uses," and which is known by the party to be "especially made or especially adapted" for use in an infringement of such patent." *Brandywine*, 904 F. Supp. 2d at 1270 (quoting 35 U.S.C. § 271(c) and citing *In re Bill of Lading*, 681 F.3d at 1337); *see also Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). In *Fujitsu*, the Federal Circuit parsed the somewhat lengthy provision in § 271(c), and explained that contributory infringement also requires four distinct elements:

> 1) that there is direct infringement, 2) that the accused had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention

620 F.3d at 1326. Like with its inducement claim, Plaintiff's Complaint lacks any allegations, let alone sufficient facts, to support ***any*** of these four required elements for contributory infringement.

In particular, the Complaint does not even offer a cursory allegation that the printer parts purportedly sold by Defendants were "material" to the claimed invention in the '628 patent. Likewise, the Complaint is entirely silent as to whether these printer components have "no substantial non-infringing uses." This is not surprising, given that the Complaint fails to specifically identify what these printer components are, how they relate (if at all) to the '628 patent, what particular functionality present in these components allegedly infringes, or how they were allegedly used "by others" to practice the claimed invention.

Thus, for these reasons alone, Plaintiff's pleading falls well short of stating a claim for relief that is plausible on its face. Indeed, this Court has repeatedly dismissed contributory infringement claims containing more substantial allegations concerning these two elements than are in Plaintiff's Complaint. For example, in *Casio*, this Court explained that "[i]n addition to pleading requisite knowledge of the patent-in-suit at the time of infringement, a claim for contributory infringement must plead acts allowing an inference that the components sold of offered have no substantial infringing uses." 912 F. Supp. 2d at 1347. In turn, the Court dismissed the plaintiff's contributory infringement claim, which "simply stat[ed] that [defendant's] Accused Products have no substantial non-infringing uses," explaining that "without more, [this claim] fails to satisfy the federal pleading

-12-

standards or support a claim for contributory infringement." *Id*. at 1349; *Brandywine*, 904 F. Supp. 2d at 1271–72; *Bonutti*, slip op. at 10.

Unlike the complaints in the cases above, Plaintiff's Complaint lacks even a formulaic assertion that the printer components are material to the invention and have no substantial non-infringing uses. Rather, the Complaint merely states that Defendants' alleged sale of these printer components "contributed to" infringement by others. Moreover, as discussed above, it is well settled that a claim for contributory infringement requires, as a predicate, a finding that some party is directly liable for the entire act of direct infringement. *See, e.g.*, *i4i Ltd. P'Ship*, 598 F. 3d at 850. Here, however, the Complaint merely asserts that the '628 patent was infringed "by others." Thus, for the same reasons that Plaintiff has failed to adequately allege third-party direct infringement in support of its induced infringement claims, its claims for contributory infringement also fail in this respect. Such superficial pleading cannot demonstrate a claim for relief that is plausible on its face.[4]

Accordingly, Plaintiff's contributory infringement claims should be dismissed.

### 3.   Plaintiff's Claims for Induced and Contributory Infringement Should Be Dismissed With Prejudice

The fatal deficiencies in Plaintiff's claims for induced and contributory infringement cannot be saved by a new round of artful or creative pleading. There is simply no factual predicate – whether on 'information and belief' or otherwise – upon which Plaintiff can rest its claims for induced and contributory infringement. Accordingly, the Court should dismiss

---

[4] Additionally, as discussed above, the Complaint does not allege that Defendants even had actual knowledge of the '628 patent, let alone factual support for the proposition that Defendants possessed such knowledge at the time of the alleged contributory infringement (*i.e.*, in 2009).

these claims without leave to amend. *See*, *e.g.*, *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (explaining that "[l]eave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

B.     **Count III of Plaintiff's Complaint Fails to Plead a Claim for Successor Liability[5]**

Plaintiff fails to plead factual allegations that would establish successor liability under any legal theory.  Generally, a company that purchases or otherwise acquires the assets of another company is not liable for the debts and liabilities of that company. *See*, *e.g.*, *Bernard v. Kee Mfg. Co., Inc.*, 409 So. 2d 1047, 1049 (Fla. 1982); *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1358 (S.D. Fla. 1999); *Fountain v Colonial Chevrolet Co.*, No. 85C-DE-88, 1988 WL 40019, at *7 (Del. Super Ct. Apr. 13, 1988). There are four exceptions to that general rule: (1) the purchasing corporation expressly or impliedly agrees to assume the seller's liabilities; (2) the asset acquisition is or amounts to a consolidation or merger; (3) the purchaser is merely a continuation of the seller; or (4) the transaction is entered into fraudulently to escape liability for obligations. *Bernard*, 409 So. 2d at 1049; *accord Ross v. Desa Holdings Corp.*, No. 05C-05-013, 2008 WL 4899226, at *4 (Del. Super Ct. Sept. 30, 2008).  Plaintiff's Complaint lacks the factual allegations necessary to plead any of the elements for any of these theories.  Instead, Plaintiff pleads facts that would refute any claim of successor liability.

---

[5] While Plaintiff's Complaint does not specify whether Florida or Delaware substantive law governs Count III, the Court need not address that issue.  As demonstrated herein, Plaintiff fails to plead a claim under Florida or Delaware law (where Hirsch is incorporated).

1.     **Plaintiff Fails to Plead that Hirsch Acquired USGA's Assets**

Plaintiff has failed to plead a claim for successor liability because the Complaint lacks the fundamental allegation that Hirsch acquired USGA's assets either directly or through a merger.  To state a claim of successor liability, a plaintiff must plead as a threshold matter that the defendant acquired the assets of the predecessor company. *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1237 (11th Cir. 2005) ([g]enerally, one of the fundamental requirements for consideration of the imposition of successor liability is a merger or transfer of assets between the predecessor and successor companies"); *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1457, (11th Cir. 1985) ("All four … exceptions require a transfer of assets in order to hold the acquiring corporation liable"); *Mason v. E. Speer & Associates, Inc.*, 846 So. 2d 529 (Fla. 4th DCA 2003) (finding that where plaintiff did not show that defendant acquired the assets of a company, plaintiff could not show successor liability); *see also Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 F. App'x 837 (11th Cir. 2008) (unpublished) (plaintiffs could establish no issue of material fact as to successor in interest liability where they could not show that there was a transfer or merger of assets from one company to the other); *Spring Real Estate, LLC v Echo/RT Holdings, LLC*, No. 7994-VCN, 2013 WL 6916277, at *5 (Del. Ch. Dec. 31, 2013) (noting that for mere continuance, the plaintiff must allege a transference of all the alleged predecessor's assets). Here, Plaintiff does not allege that Hirsch acquired USGA's assets.

Instead, Plaintiff seeks to assert successor liability based on Hirsch's acquisition of USGA stock.  In particular, Plaintiff alleges that "Hirsch acquired 80%..." of USGA's stock "sometime in 2008 (hereinafter the "Acquisition") with an option to purchase the remaining

20%.  (Doc. 1, ¶¶ 21–22).   Plaintiff then offers the conclusory assertion that "[t]he Acquisition constituted a *de facto* merger…," "[f]ollowing the Acquisition, Hirsch's business activities continued as a mere continuation of USGA's prior business activities," and "as a result of the foregoing, Hirsch has expressly or impliedly assumed the liabilities of USGA."

As a matter of law, Plaintiff cannot satisfy its pleading obligations for a successor liability claim by merely alleging that Hirsch acquired USGA stock, even where Hirsch became a majority or sole shareholder.  *Infante v. Bank of Am. Corp.*, 680 F. Supp. 2d 1298, 1306 (citing *Corporate Express Office Prods., Inc. v. Phillips*, 847 So. 2d 406, 412 (Fla. 2003)); *Hawkins v. Ford Motor Co.*, 748 So. 2d 993, 1000 (Fla. 1999) ("[T]here is a clear distinction between the transfer of an asset of a corporation, such as a franchise agreement, and a transfer of the stock in a corporation itself.").[6]  For this fundamental reason, Plaintiff's claim is legally defective and should be dismissed.

---

[6]  It bears mention that Plaintiff does not and cannot rely on the alleged auction of certain USGA assets to plead this fundamental element of its claim.  On its face, the Complaint asserts successor liability based on the "Acquisition," which is defined as the stock acquisition in 2008, not the auction in 2009 of "various T-Jet to garment printers as well as associated components." (Doc. 1, ¶¶ 28, 53-54).   Furthermore, Plaintiff alleges that this auction occurred in 2009 after "USGA ceased operations."  (*Id.* at ¶ 28).  Plaintiff's successor liability claim, however, rests on its conclusory assertion that "[f]ollowing the Acquisition, Hirsch's business activities continued as a mere continuation of USGA's prior business activities."  Finally, the Court can take judicial notice, based on documentary evidence and publically available bankruptcy filings, that the alleged auction arose in connection with a loan by GAA to USGA, which was not repaid and which GAA attempted to foreclose upon. *See, e.g.*, Chapter 7 Trustee's Final Account And Distribution Report Certification That The Estate Has Been Fully Administered And Application To Be Discharged (TDR), *In re Lowery Machine & Supply, LLC*, No. 09-07075, ECF No. 58 (Bankr. D.S.C. Oct. 4, 2011).  The company hired to effect the foreclosure, however, absconded with the assets, declared bankruptcy, and ultimately settled GAA's related claims for a few thousand dollars.  Thus, Hirsch never acquired the USGA assets to continue USGA's business.

## 2.      Even if Plaintiff Alleged an Asset Transfer, Its Pleadings Fail

Even if Plaintiff had alleged that Hirsch acquired all of USGA's assets, it fails to plead facts sufficient to establish successor liability under any applicable theory.  Count III of Plaintiff's Complaint asserts three theories of successor liability: (i) the Acquisition was a *de facto* merger; (ii) Hirsch's business was a mere continuation of predecessor's business; (iii) Hirsch expressly or impliedly assumed the liabilities of USGA.  (Doc. 1, ¶¶ 52–55).  Plaintiff cannot meet its pleading requirements simply by reciting these three theories, without pleading facts sufficient to support them.  *Robinson v. Jewish Ctr. Towers, Inc.*, 993 F. Supp. 1472, 1476 (M.D. Fla. 1988) ("[T]he court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions."); *Jackson v. Bell South Telecmmunications*, 372 F.2d 1250, 1263 (11th Cir. 2004) ("To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."); *Joseph v Shell Oil Co.*, 498 A.2d 1117, 1122 (Del. Ch. 1985) ("All well plead factual allegations must be accepted as true but legal conclusions and unsupported factual conclusions will not be deemed admitted.").  A review of the Complaint demonstrates that Plaintiff fails to plead facts sufficient to plead liability under any of these three theories.

### a.      Plaintiff Does Not Allege Facts to Plead a De Facto Merger

To plead a *de facto* merger, a plaintiff must allege facts that would show that the predecessor company was absorbed by the successor company, without formal compliance with the statutory requirements for a merger.  *See*, *e.g.*, *Amjad Munim M.D., P.A. v. Azar*, 648 So. 2d 145, 153 (Fla. 4th DCA 1994); *Fidanque v Am. Maracaibo Co.*, 92 A.2d 311

(Del. Ch. 1952).  It has been described as a "relay style passing of the baton" between two companies.  *Lab. Corp. v. Prof'l Recovery,* 813 So. 2d 266 (Fla. 5th DCA 2002) (citing *Oman Int'l Fin. Ltd. v. Hoiyong Gems Corp.*, 616 F. Supp. 351, 361 (D. R.I. 1985)).  Critical to this theory are allegations that the <u>successor</u> company has the "same management, personnel, assets, location and stockholders."  *300 Pine Island Assocs., Ltd. v. Cohen & Assocs. P.A.*, 547 So. 2d 255, 256 (Fla. 4th DCA 1989).

By contrast, Plaintiff alleges that following the Acquisition, the <u>predecessor</u> companies' president, assets, location, and operations remained unchanged.  In particular, Plaintiff alleges that after the stock acquisition, USGA maintained its "offices in Scottsdale, Arizona," that "Scott Fresner (sic) was retained as an employee of USGA" and "continued to participate in the day-to-day operations of USGA", and that "USGA continued to sell direct-to-garment printers." (Doc. 1, ¶¶ 24–27).  The Complaint does not allege that USGA's management, personnel, location or operations became those of Hirsch.  Nor does the Complaint allege that Hirsch ever sold USGA products; it only alleges that Hirsch sold Kornit printers (which were not sold by USGA).  (*Id*. at ¶¶ 30–31).

Plaintiff, therefore, has failed to plead a single fact that could establish a *de facto* merger. The facts alleged show instead that, after the purchase of stock, USGA and Hirsch continued in the same manner as they had prior to the stock acquisition, retaining their existing management, employees, shareholders, location, and operations, and not assuming that of the other.

Accordingly, Plaintiff has failed to plead successor liability based on a *de facto* merger.

b.      Plaintiff Does Not Allege Facts to Plead Mere Continuation
Theory

Plaintiff's Complaint makes the conclusory assertion that Hirsch is a "mere
continuation" of USGA.  (*Id*. at ¶ 53).  Yet the Complaint lacks any factual allegations to
support the application of that theory of liability.  Indeed, the Complaint's factual allegations
render the "mere continuation" theory wholly inapplicable.

To plead successor liability under a mere continuation theory, a plaintiff must plead
facts that would show that the predecessor company, in a bid to escape its liabilities, was
shuttered, and an entity substantially the same as its previous incarnation was re-formed in its
place.  *See*, *e.g.*, *Amjad Munim M.D., P.A.,* 648 So. 2d at 153-54; *Bud Antle, Inc.*, 758 F.2d at
1458; *Elmer v. Tenneco Resins, Inc*., 698 F. Supp. 535, 542 (D. Del. 1988) (also noting that
Delaware courts narrowly construe the continuation theory).  The theory has been described
as the "new hat" doctrine – i.e., the successor corporation is merely a "new hat" for the
predecessor corporation.  *Lab. Corp*., 813 So. 2d at 270 ("While having common attributes
does not automatically impose liability on a successor corporation, merely repainting the sign
on the door and using new letterhead certainly gives the appearance that the new corporation
is simply a continuation of the predecessor corporation.").  The crucial distinction between
mere continuance and *de facto* merger is the manner in which the successor-predecessor
relationship arose. Typical mere continuation occurs when the successor company springs up
in the place of the predecessor company, while *de facto* merger occurs when the predecessor
is absorbed into the successor.

Plaintiff's Complaint makes no effort to meet the factual pleading requirements of
this theory or consider its distinction from a *de facto* merger.  Instead, the Complaint alleges

that prior to the Acquisition, Hirsch was a separate entity incorporated in Delaware, with its principal place of business in New York and USGA was founded and based on Scottsdale, Arizona. (Doc. 1, ¶¶ 2–4).  The Acquisition, according Plaintiff's allegations, did not result in any change in the status of these entities.  (*Id.*).  The Complaint makes no attempt and could not plead facts that would show that Hirsch sprang up in place of USGA or that Hirsch was merely a "new hat" for USGA. Hirsch is not pled to be a mere continuance of USGA because it was a functioning business entity before and after the stock purchase by Hirsch. Plaintiff also does not plead that Hirsch was formed for the purpose of allowing USGA's business to continue while escaping its debts.  *See*, *e.g.*, *Orlando Light Bulb Serv., Inc. v Laser Lighting & Elec. Supply, Inc.*, 523 So. 2d 740, 743 (Fla. 5th DCA 1988) ("[N]or was [the alleged successor] formed for the purpose of taking over [the predecessor's] business, because it had been engaged in the same business for approximately ten years before this transaction took place.").

 Accordingly, Plaintiff has failed to plead successor liability under the mere continuation of business theory.

> c.    Plaintiff Does Not Allege Facts to Plead Assumption of Liability

Plaintiff's complaint alleges no facts in support of its assertion that Hirsch expressly or impliedly assumed the liabilities of USGA.  Rather, Plaintiff relies on the conclusion that "[a]s a result of the foregoing [assertions that there was a *de facto* merger or a mere continuance between USGA and Hirsch], Defendant has expressly or impliedly assumed the liabilities of USGA." (Doc. 1, ¶¶ 52–54).  Express or implied assumption of the liability is a

separate theory of successor liability.  It is not the mere result of these other theories, which –
as demonstrated above – Plaintiff fails to adequately plead.

To plead an express assumption of liability, the complaint must allege that there is
language in the acquisition or merger agreement that expressly provides for assumption of
liability.  *Cf. Casements Inc. v. Ruscoe*, 85 So. 2d 736 (Fla. 1956); *Fountain*, 1988 WL
40019, at *7.  Plaintiff has not made such an allegation.  An implied assumption of liability
may be pled by alleging that the successor company has specifically assumed accounts,
expenses or other obligations of the predecessor company, *see e.g.*, *Coral Windows
Bahamas, Ltd. v. Pande Pane, LLC*, No. 11-cv-22128, 2013 WL 321584 (S.D. Fla. Jan. 28,
2013); or that the alleged successor replaced the predecessor as the party in the relevant
agreements creating the liability, *see e.g.*, *Sewell v. D'Alessandro & Woodyard, Inc.*, 655 F.
Supp. 2d 1228 (M.D. Fla. 2009), *vacated in part on other grounds*, 725 F. Supp. 2d 1344
(M.D. Fla. 2010); or that the successor has made payment of a predecessor's debt, *see e.g.*,
*Winn-Dixie Stores, Inc. v. LJD & A Corp.*, No. 3:13-cv-1172, 2014 WL 4373369 (M.D. Fla.
Sept. 3, 2014); or that the successor has held itself out as the predecessor, *see e.g.*,
*Magnolia's at Bethany, LLC v Artesian Consulting Eng'rs, Inc.*, No. S11C-04-013, 2011 WL
4826106, at *2 (Del. Super Ct. Sept. 19, 2011).  The Complaint does not plead that any of
these events occurred.

Accordingly, Plaintiff has failed to plead successor liability based on an express or
implied assumption of liability.

\*\*\*

In sum, Plaintiff has asserted a successor liability claim against Hirsch without regard to the elements of such a claim, and based on only conclusory assertions held up by insufficient or irrelevant factual allegations.  Plaintiff has not and cannot plead this claim.

3.   **Plaintiff's Claim for Successor Liability Should Be Dismissed With Prejudice**

Plaintiff's claim for successor liability should be dismissed with prejudice, since Plaintiff has pled facts contrary to the elements of a successor liability claim, and dismissal with prejudice is proper where a more carefully drafted complaint could not state a claim. *See, e.g.*, *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1213 (11th Cir. 2001).  Plaintiff has shown no transference of assets required to establish successor liability, has undermined its own theories of successor liability, and has indicated that USGA continued on as its own entity, totally unchanged, after the stock acquisition.  Plaintiff therefore is foreclosed from amending its pleading to state a claim for successor liability and, as such, this claim should be dismissed with prejudice.

V.   CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court enter an order dismissing Counts II and III of Plaintiff's Complaint with prejudice.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, on June 5, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,


/s/ Taylor F. Ford
Thomas A. Zehnder
Florida Bar No.: 0063274
Taylor F. Ford
Florida Bar No.: 0041008
KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone:  (407) 422-2472
Facsimile:  (407) 648-0161
Email:  tzehnder@kbzwlaw.com
Email:  tford@kbzwlaw.com

Noah M. Weissman[*]
Joseph J. Richetti[*]
Alexander D. Walden[*]
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104-3300
Telephone:  (212) 541-2000
Facsimile: (212) 541-4630
Email:  nmweissman@bryancave.com
Email:  joe.richetti@bryancave.com
Email:  alexander.walden@bryancave.com

*(Motions to appear pro hac vice forthcoming)*

*Counsel for Defendants Hirsch International Corp.*
*& Graphic Arts Acquisition Corp.*